UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA

-v-

KEVIN MIZELL,

                              Defendant.

---

No. 14-cr-212 (RJS)
<u>ORDER</u>

<u>RICHARD J. SULLIVAN</u>, Circuit Judge:

Before the Court are two *pro se* letters from Defendant Kevin Mizell (see attached).  The first letter, which is dated January 27, 2021 but was received in Chambers on February 4, 2021, requests a compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A), or, alternatively, seeks home confinement under 18 U.S.C. § 3624(c)(2), on the grounds that Mizell has contracted COVID-19.  Mizell's second letter, dated February 1, 2021 but received in Chambers on February 5, 2021, asks the Court to recommend to the Bureau of Prisons ("BOP") that it deduct a year off Mizell's sentence in light of his successful completion of the Residential Drug Abuse Program ("RDAP").  For the reasons discussed below, Mizell's motions are DENIED.[1]

## *Background*[2]

Around 2006, Mizell and four other individuals founded a violent street gang known as the Murda Moore Gangstas ("MMG") in the Bronx.  ("PSR" ¶¶ 19–20.)  Although MMG began as a small operation engaged in robberies and narcotics trafficking, the gang eventually expanded to

---

[1] Although Mizell also seeks the appointment of counsel to assist him in filing his motion for compassionate release, his request is mooted by the denial of his compassionate release.

[2] The facts are largely taken from the Presentence Report ("PSR") prepared in connection with Mizell's sentencing, as well as the submissions of the parties.  Record citations to page numbers correspond to the page numbers provided in the ECF legend atop the filing, not to the filing's own pagination.

include approximately 50 young men, several of whom shot and injured members of opposing gangs. (*Id.* ¶¶ 19–20, 29–32, 37, 40.)  As a leader in MMG, Mizell organized and facilitated some of these shootings; at one point in 2013, for example, he provided his firearm to a co-conspirator who shot three members of a rival gang in the back and also shot one of the three victims in the face. (*See id.* ¶¶ 29, 34–35, 68.)  Mizell also participated in an armed robbery (*Id.* ¶ 46), and on a different occasion, he personally fired five shots at a rival gang member (Sent'g Tr. at 21).

A grand jury eventually charged Mizell with one count of racketeering conspiracy in violation of 18 U.S.C. § 1962(d); one count of discharging a firearm in furtherance of that conspiracy in violation of 18 U.S.C. § 924(c)(1)(A)(iii); three counts of attempted murder in aid of racketeering in violation of 18 U.S.C. § 1959(a)(5); and one count of Hobbs Act robbery in violation of 18 U.S.C. § 1951. (Doc. No. 163.)  Pursuant to a plea agreement with the government, Mizell subsequently pleaded guilty to the racketeering conspiracy count and to a lesser-included offense of possessing a firearm in furtherance that conspiracy, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i). (*See* PSR ¶ 15.)

At sentencing, the Court calculated a Sentencing Guidelines range of 57 to 71 months' imprisonment for Mizell's racketeering offense, based partly on Mizell's leadership role in two aggravated assaults, both of which resulted in injuries to the victims, as well as Mizell's involvement in a gang-related robbery. (Sent'g Tr. at 11–13.)  The Court also concluded that Mizell's unlawful possession of a firearm carried an additional, mandatory consecutive term of five years to be served after he finished serving his sentence on the racketeering conspiracy. (*Id.* at 13.)  While the Court carefully considered Mizell's youth at the time of the offenses, his natural talents and intelligence, his apparent remorse and sincere desire to lead a law-abiding life, and his family support (*see id.* at 26, 33, 43), the Court nevertheless found that a sentence of ten years'

imprisonment was "compelled" by the facts of the case in light of the seriousness of the offenses, Mizell's leadership role in them, and the need for specific and general deterrence (*see id.* at 35–36). Mizell is currently serving his sentence at FCI Fort Dix and, according to the BOP's public database, is scheduled to be released on October 9, 2022. *See Find an Inmate* https://www.bop.gov/mobile/find_inmate/byname.jsp#inmate_results (last visited Feb. 28, 2021).

### *Analysis*

In his letters, Mizell alternatively requests a sentencing reduction under the First Step Act, *see* 18 U.S.C. § 3582(c)(1)(A), home confinement under the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), *see* Pub. L. No. 116-136, § 12003(b)(2) (2020), or a recommendation from the Court that the BOP give him credit for completing the RDAP program. The Court will address each in turn.

### A. Compassionate Release

It is well-established that a court "may not modify a term of imprisonment once it has been imposed except pursuant to statute." *United States v. Roberts*, No. 18-cr-528 (JMF), 2020 WL 1700032, at *1 (S.D.N.Y. Apr. 8, 2020). Section 3582(c)(1)(A) provides one such exception, permitting a court to reduce a defendant's sentence where (1) "extraordinary and compelling reasons warrant such a reduction," and (2) such relief would be consistent with both the objectives of sentencing set forth in 18 U.S.C. § 3553(a) and "applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A).[3]

---

[3] Before the Court can grant an inmate's motion for compassionate release, the inmate must exhaust his administrative remedies, or submit a request to the BOP for compassionate release and wait 30 days without receiving a response. *See* 18 U.S.C. § 3582(c)(1)(A). Mizell asserts that he applied to the Warden at Fort Dix for compassionate release on November 15, 2020, and had not yet received a response as of January 27, 2021. For purposes of deciding Mizell's motions, the Court takes his submission at face value and finds that he has exhausted his administrative remedies.

Here, Mizell argues that the COVID-19 pandemic, along with his chronic stomach pain, merits a sentencing reduction. But Mizell's medical issues fall far short of the "extraordinary and compelling" reasons required for a reduced sentence. For starters, he has already contracted the coronavirus, "which makes it unlikely that he w[ill] face the virus again." *United States v. Epskamp*, No. 12-cr-120 (RJS), 2021 WL 326971, at *2 (S.D.N.Y. Feb. 1, 2021); *see also Reinfection with COVID-19*, Ctrs. for Disease Control & Prevention, https://www.cdc.gov/coronavirus/2019-ncov/your-health/reinfection.html (updated Oct. 27, 2020). And while Mizell has developed stomach pain, his letter dated January 27, 2021 reports that he is receiving medical treatment to address that ailment. Moreover, stomach pain is not associated with increased risk of severe negative effects from the coronavirus. *See People with Certain Medical Conditions*, Ctrs. for Disease Control & Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (updated Feb. 22, 2021).

But even if Mizell could establish a compelling and extraordinary reason for a sentencing reduction, countervailing factors still compel denial of such relief. As noted above, before granting a motion for compassionate release, the Court must assess the § 3553(a) sentencing factors to determine "whether those factors outweigh the 'extraordinary and compelling reasons' warranting compassionate release, particularly whether compassionate release would undermine the goals of the original sentence." *United States v. Ogarro*, No. 18-cr-373-9 (RJS), 2020 WL 5913312, at *2 (S.D.N.Y. May 13, 2020) (quoting *United States v. Ebbers*, No. 02-cr-1144 (VEC), 2020 WL 91399, at *7 (S.D.N.Y. Jan. 8, 2020)). Those sentencing factors include (1) "the nature and circumstances of the offense," (2) "the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," and

(3) "the need for the sentence imposed . . . to afford adequate deterrence to criminal conduct."  18 U.S.C. § 3553(a).

Here, the same § 3553(a) factors that compelled the Court to impose a ten-year sentence apply with equal force today.  As the Court underscored at sentencing, Mizell directed and participated in multiple, serious crimes of violence – crimes that resulted in physical injury to the victims who were shot (by a co-defendant using Mizell's firearm); crimes that could have caused death; and crimes that might, if charged differently, have carried a much higher mandatory minimum sentence.  (Sent'g Tr. 18, 34–35.)  Of course, the Court continues to appreciate the fact that Mizell has evidently turned his life around, and is pleased to hear that Mizell has maintained an exemplary prison record, earned a GED and an associate degree, and successfully completed RDAP.  But the Court acknowledged Mizell's positive trajectory at the time of his original sentence and nevertheless concluded that a ten-year sentence was compelled by Mizell's leadership in serious and potentially deadly offenses, combined with the need for deterrence.  The Court therefore concludes that "[g]ranting [Mizell's] compassionate-release motion, when he is more than a year away from completing his carceral term, would disserve these important § 3553(a) factors."  *United States v. Martinez*, No. 12-cr-862-10 (AJN), 2020 WL 2079542, at *3 (S.D.N.Y. Apr. 30, 2020).

### B.  Other Requested Relief

Mizell further seeks home confinement under the CARES Act and a recommendation from the Court that the BOP reduce his sentence in light of his successful conclusion of RDAP.

The Court lacks any authority to deduct a year from Mizell's sentence for his completion of RDAP, because the BOP has the sole discretion over that decision.  *See* 18 U.S.C. § 3621(e)(2)(B) ("The period a prisoner convicted of a nonviolent offense remains in custody after

successfully completing a treatment program *may be reduced* by the Bureau of Prisons . . . ." (emphasis added)); *see also United States v. Mcrae*, No. 17-cr-643 (PAE), 2021 WL 142277, at *2 (S.D.N.Y. Jan. 15, 2021).  Since, according to Mizell's letter dated February 1, 2021, the BOP has already determined that Mizell's crimes disqualify him from early release under § 3621(e), *see* 28 C.F.R. § 550.55 (noting that inmates are not qualified for earlier release for violent offenses like robbery and aggravated assault), the Court finds no basis for recommending that the BOP revisit its conclusion.

The CARES Act likewise provides no basis for the Court to order Mizell's requested relief. Though the CARES Act and the Attorney General's April 3, 2020 memorandum authorize the BOP to permit prisoners to finish the remainder of their sentence at home confinement, this remedy is exclusively within the discretion of the BOP; the Court lacks the authority to order home confinement.  *See* Pub. L. No. 116-136, § 12003(b)(2) (2020); 18 U.S.C. § 3624(c)(2); *United States v. Corley*, No. 18-cr-454-3 (KPF), 2021 WL 242451, at *4 n.7 (S.D.N.Y. Jan. 25, 2021).

### Conclusion

To the extent Mizell has not fully recuperated from the coronavirus, the Court wishes him a speedy recovery, and again, congratulates him on his recent accomplishments.  Nevertheless, for the reasons set forth above, the Court must, respectfully, DENY Mizell's motions.  The Clerk of Court is respectfully directed to mail Mizell a copy of this Order.

SO ORDERED.

Dated:        March 1, 2021
              New York, New York

RICHARD J. SULLIVAN
UNITED STATES CIRCUIT JUDGE
Sitting by Designation

YOUR HONOR,

I AM REQUESTING AN ATTORNEY BE APPOINTED TO ME TO ASSIST ME IN PRESENTING MY MOTION FOR COMPASSIONATE RELEASE, WHICH I AM FILING PRO SE. I THANK YOU IN ADVANCE FOR YOUR CONSIDERATION AND PRAY FOR AN EXPEDITIOUS RULING IN THIS MATTER, SINCE I HAVE TESTED POSITIVE FOR COVID-19 AND ESPECIALLY SINCE ANOTHER INMATE HERE AT FCI FORT DIX RECENTLY DIED, AND I AM AFRAID OF POSSIBLE NEGATIVE OUTCOMES FROM CONTINUED EXPOSURE TO THIS MUTATING VIRUS.

RESPECTFULLY SUBMITTED,

Kevin Mizell
Kevin Mizell
70893-054

Jan 12th

JOINT BASE McGUIRE-DIX-LAKEHURST   U.S. Rep. Andy Kim is demanding the federal Bureau of Prisons (BOP) institute a lockdown as COVID-19 continues to tear through FCI Fort Dix.

Kim on Monday called for BOP Director Michael Carvajal to take immediate action at the federal prison where the number of active COVID-19 cases is nearly double the number at any other BOP facility in the country.

"The outbreak of COVID-19 at Ft. Dix FCI is a clear and present danger to the federal employee staff, the inmates, and to our communities in New Jersey surrounding the Joint Base," Kim said in a statement.

As of Monday, BOP reported 797 active cases among inmates, and 26 active cases among staff members. No deaths have been reported.

On Tuesday, U.S. Sens. Cory Booker and Robert Menendez sent a letter to FCI Fort Dix Warden David Ortiz with raising concerns surrounding the prison's use of home confinement as well as the medical care for inmates who have tested positive for COVID-19.

The senators called for the warden to grant home confinement to as many as eligible inmates as possible.

"The conditions at facilities in New Jersey, specifically your facility, have grown increasingly worrisome.. We are still very concerned for the safety and well-being of individuals behind bars in New Jersey and across our country. It is critical that you prioritize the use of your statutory authorities to grant home confinement to as many eligible people as possible," the senators wrote.

In addition, the senators sent the warden a detailed list of questions around the BOP's home confinement program and its medical care for inmates

There are currently 2,745 inmates at the federal detention facility on Joint Base McGuire-Dix-Lakehurst.

The base is located near Burlington County towns such as Pemberton Township, Wrightstown, North Hanover, and is near the Ocean County border.

"I continue to hear from Bureau of Prisons (BOP) leadership that the situation in under control or improving, but it is clearly not," Kim said.

BOP officials declined to comment on the congressman's demand, and said responds directly to Members of Congress and their staff. Out of respect and deference to Members, we do not comment on our Congressional correspondence with media.

Last week, an inmate at the prison, Paul Diaz, described an environment where CDC protocols are nearly impossible to adhere to, and when they are able to be followed   like by wearing a face mask   they are often ignored.

"It's scary   knowing our health is in their hands," Diaz, of New York City, said in a phone interview. "Don't put me in a position where I am going to get sick and get life sentence due to disease they are not controlling in a good way   especially in this environment."

Date: January 27, 2021

From: Kevin Mizell #70893-054
      Unit 5852 (RDAP)
      Federal Correctional Institution
      FCI Fort Dix
      P.O. Box 2000
      Joint Base MDL, NJ 08640

To:   Clerk of Court's Office
      United States District Court
      Southern District of New York
      Daniel Patrick Moynihan United States Courthouse
      500 Pearl Street, Room 2104
      New York, NY 10007-1312

Re:   <u>Untied States v. Kevin Mizell</u>, Case No. 14-CR-212-(RJS)
      Motion Under 18 U.S.C. 3582 (c)(1)(A)(i) for Compassionate
      Release or Sentence Reduction

Clerk of the Court:

     Please accept this letter application as a Motion unfer
Title 18, United Stats Codes Services, Section 3582(c)(1)(A)(i),
requesting a sentence reduction for compassionate Release to the
extraordinary and compelling circumstances pursuant to the
Coronavirus Aid, Relief, and Economic Security Act (hereinafter
"CARES Act"). At this time, Kevin Mizell (hereinafter
"Petitioner"), is requesting a sentence reduction.

## BACKGROUND

     KEVIN MIZELL was charged with violating Title 18: 1962 (D)
Racketeering Conspiracy CT1 and plead guilty to a sentence of 60
months and 3 years of supervised release, and CT3 Title 18:
924(c) use/carry/possession of firearm during a crime of
violence and received a sentence of 60 months and 5 years of
supervised release with CT1 and CT3 to run consecutive for a
total of 10 years.

     The Petitioner has a well-documented history of medical
complications which stem from injuries suffered prior to and
during his incarceration. While housed in the Federal Bureau of
Prisons, he has suffered medical ailments to the harsh living
conditions, dismal medical treatment, and unsanitary conditions.
Although the Petitioner's physicians directed that he receive
follow-up care and be places on the chronic care patient list,

(1)

such care is repeatedly delayed and/or difficult to obtain. He continues to suffer from problems associated to his diagnosis of stomach pain and takes medicine of docusate sodium 100 mg cups.

The Petitioner requests release in advance of his release date (October 09, 2022), because he is at risk of contracting, and experiencing serious complications from COVID-19 if he remains housed in the FCI Fort Dix Federal Bureau of Prisons Law Complex Facility (the "BOP"). He spends most of each day in a 12-man cell that is barely large enough for a single occupant and social distancing is impossible as so stated by the Warden at his facility. The BOP acknowledges that COVId-19 is present within the BOP and number 1 at his facility. See COVID-19 Tested Positive Cases, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/.

The court has the authority to act on Petitioner's application, considering that he has exhausted the administrative remedies under § 3582 (c)(1)(A), which requires that a defendant seeking compassionate release, present his application to the BOP and then either (1) administratively appeal an adverse result if the BOP does not agree that his sentence should be modified, or (2) waited for 30 days to pass. On November 15, 2020, the Petitioner submitted an informal request for home confinement and compassionate release application to the Warden and staff which can be considered as a sensitive BP-9 application for a sentence modification to the Warden at the FCI Fort Dix Facility. To, date, the BOP nor the Warden have not acted on that request. See attached exhibit, inmate request hereto and incorporated as reference.

The Court holds, however, that Petitioner's exhaustion of the administrative process can be in light of the extraordinary threat posed-in his unique circumstances-by the COVID-19 pandemic. See Washington v. Barr, 925 F.3d 109, 118 (2d Cir. 2019 ("Even where exhaustion is mandated by statute..., the requirement is not absolute"). The current pandemic has let to President Trump placing the United States under a state of emergency for COVID-19 and this threat constitutes an extraordinary and compelling reason to reduce the Petitioner's sentence to time served or to be placed on home confinement for the duration of his remaining incarceration time.

As amended by the First Step Act, 18 U.S.C. § 3582 (c)(1)(A)(i), authorizes courts to modify terms of imprisonment as follows:

The court may not modify a term of imprisonment once it has been imposed except that-in any case-the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original terms of imprisonment), after considering the factors set forth in 18 U.S.C.    § 3553(a) to the extent that they are applicable, in if it finds that---

    (i)    extraordinary and compelling reasons warrant such a reduction...and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission. Accordingly, in order to be entitled to relied under 18 U.S.C. § 3582(c)(1)(A)(i), Petitioner must both meet the exhaustion requirement and demonstrate that "extraordinary and compelling reasons" warrant a reduction of his sentence. The Petitioner will address these requirements in turn.

## EXHAUSTION

Section 3582(c)(1)(A)(i), imposes "a statutory exhaustion requirement" that "must be strictly enforced". United States v. Monzon, No. 99 Cr. 157, 2020 WL 550220, at *2 (S.D.N.Y. Feb. 4, 2020) (citing Thedoropoulos v. I.N.S., 358 F.3d 162, 172 (2d Cir. 2004)(internal quotation marks omitted). "Even where exhaustion is seemingly mandated by statute..., the requirement is not absolute." See Washington v. Barr, 925 F.3d 109, 118 (2d Cir. 2019 (citing McCarthy v. Madigan, 503 U.S. 140, 146-47 1992)). The Court need not decide whether § 3582(c)'s exhaustion requirement is a jurisdictional requirement or merely a mandatory claim-processing rule. See Monzon, 2020 WL 550220, at *2 (describing split between courts on that question).

The Court may waive that requirement only if one of the recognized exceptions to exhaustion applies. There are three circumstances where failure to exhaust may be excused. "First, exhaustion may be unnecessary where it would be futile, either because agency decision makers are biased or because the agency has already determined the issue." Supra. Second, "exhaustion may be unnecessary where the administrative process would be

incapable of granting adequate relief. Supra at Barr, 925 F.3d at 119. Third, "exhaustion may be unnecessary where pursuing agency review would subject plaintiffs to undue prejudice." Id.

All three of these exceptions apply here. "[U]ndue delay, if it in fact results in catastrophic health consequences, could make exhaustion futile. Moreover, the relief the agency might provide could, because of undue delay, become inadequate. Finally, and obviously, [Petitioner] could be unduly prejudices by such delay." Se Washington, 925 F.3d at 120-21; see also Bowen v. City of New York, 476 U.S. 467, 483 (1986) (holding that irreparable injury justifying the waiver of exhaustion requirements exists where "the ordeal of heaving to go through the administrative process may trigger a severe medical setback "(internal quotation marks, citation, and alterations omitted)); Abbey v. Sullivan, 978 F.2d 37, 46 (2d Cir. 1992) ("[I]f the delay attending exhaustion would subject claimants to deteriorating health,...then waiver may be appropriate."); New York v. Sullivan, 906 F.3d 910, 918 (2d Cir. 1990) (holding that waiver was appropriate where "enforcement of the exhaustion requirement would cause the claimants irreparable injury" by risking "deteriorating health, and possibly even...death").

"Prisons are "powder kegs for infection" and have allowed "the COVID-19 virus [to] spread[ ] with uncommon and frightening speed," United States v. Skelos, No. 15-CR-317, 2020 WL 1847558, at *1 (S.D.N.Y. Apr. 12, 2020). Given this reality, the need to expedite consideration of requests for compassionate release premised on potential exposure to COVID-19 takes on even new urgency, see Haney, 454 F.Supp.3d at 321-22 (noting that "at the time the First Step Act passed, a 30-day period before which to seek judicial review would have seemed exceptionally quick. Under present circumstances, each day a[n] [inmate] must wait before presenting what could otherwise be a meritorious petition threatens him with a greater risk of infection and worse.)".

Here even a few weeks delay carries the risk of catastrophic health consequences for the Petitioner. The Court concluded in Washington v. Barr, that requiring the defendant to exhaust administrative remedies, given his unique circumstances and the exigency of a rapidly advancing pandemic, would result in undue prejudice and render exhaustion of the full BOP administrative process both futile and inadequate. To be sure, "the policies favoring exhaustion are most strongly implicated" by challenges to the application of existing regulations to particular individuals. See Pavano v. Shalala, 95 F.3d 147, 150 (2d Cir. 1996) (internal quotation marks, citation, and

(4)

alterations omitted).

Ordinarily, requests for sentence reduction under § 3582© would fall squarely into that category. But "courts should be flexible in determining whether exhaustion should be excused." id. at 151, and "[t]he ultimate decision of whether to waive exhaustion...should also be guided by the policies underling the exhaustion requirement". See Bowen, 476 U.S. at 484. The provision allowing defendants to bring motions under §3582(c) was added by the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194 (2018), in order to "increas[e] the use and transparency of compassionate release." 132 Stat. 5239. Requiring exhaustion generally furthers that purpose, because the BOP is best situated to understand an inmate's health and circumstances relative to the rest of the prison population and identify "extraordinary and compelling reasons" for release. See 18 U.S.C. 3582(c)(1)(A)(i).

In the Petitioner's case, however, administrative exhaustion would defeat not further, the policies underling § 3582(c). Here, delaying release amounts to denying relief altogether. The Petitioner has less than twenty-five months remaining on his sentence, and pursuing the administrative process would be a futile endeavor; and, he is unlikely to receive a final decision from the BOP in a timely fashion as COVID is rapidly spreading in his institution. The Petitioner asks that his sentence be modified so the he can be released now, because remaining incarcerated, for even a few weeks, increases the risk that he will contract COVID-19.

## DISCUSSION

The Court in Perez, found that the defendant set forth "extraordinary and compelling reasons" to reduce his sentence to time served. See United States v. Perez, Case No. 12-CR-513-3(AT) (S.D.N.Y. April 1, 2020); see also 18 U.S.C. § 3582(c)(1)(A)(i). The Government in Perez, did not dispute that the defendant had shown compelling reasoning to have his sentence reduced to time served. Id. Perez's medical condition, combined with the limited time remaining on his prison sentence and the high risk in the MDC posed by COVID-19, clears the high bar set by § 3582(c)(1)(A)(i). Furthermore, the Petitioner has served the greater portion his prison term by serving 75% of his 60-month term of imprisonment. The authority to define "extraordinary and compelling reasons" has been granted to the United States Sentencing Commission, which has defined that

(5)

terms as U.S.S.G. § 1B1.13, comment n.1 See United States v. Ebbers. No. 02-cr-11443, 2020 WL 91399, at 4-5 (S.D.N.Y. Jan. 9, 2020). The Second Circuit has recently affirmed that the First Step Act freed District Courts to independently to determine what reasons, for purposes of compassionate release, are "extraordinary and compelling," despite United States Sentencing Guideline § 1B1.13 Application Note 1(D) (United States v. Brooker, 976 F.3d 228, 234 [2d Cir. 2020]).

## I.  EXTRAORDINARY AND COMPELLING REASONS FOR RELEASE

First, extraordinary and compelling reasons for modification exist where "[t]he defendant is...suffering from a serious physical or medical conditions...that substantially diminishes that ability to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." See U.S.S.G. §1B1.13. A number of courts have denied applications for sentence modification under § 3582 (c)(1)(A)(i) brought on the basis of the risk posed by COVID-19 on the ground that the defendants failed to exhaust administrative remedies. See, e.g. United States v. Zywotko, No. 2:19-cr-113, 2020 WL 1492900, at *1 (M.D. Fla. Mar. 27, 2020); United States v. Garza, No. 18-cr-1745, 2020 WL 1485782, At *1 (S.D. Cal. Mar 27, 2020); United States v. Hernandez, No. 19-cr-834, 2020 WL 1445851, at *1 (S.D.N.Y. Mar. 25, 2020); United States v. Gileno, No. 19-cr-151, 2020 WL 1307108, at *3, (D. Conn. Mar. 19, 2020). But in several of those cases, the defendant was not in a facility where COVID-19 was spreading, and in none of them did the defendant present compelling evidence that that his medical condition put him at particular risk of experiencing deadly complications from COVID-19.

In this case, unlike those previously mentioned, Petitioner has established that enforcing the exhaustion requirement carries the real risk of inflicting severe and irreparable harm to his health. The Honorable Lorna G. Schofield recently granted an application for sentence reduction under § 3582(c) under similar circumstances. See United States v. Campagna, No. 16-cr-78-01, 2020 WL 1489829, at *3 (S.D.N.Y. Mar. 27 2020). Judge Schofield approved the request of a defendant confined to the Brooklyn Residential Reentry Center (the "RCC") stating that his "compromised immune system, taken in concert with the COVID-19 public health crisis, constitutes and extraordinary and compelling reason to modify [d]efendant's sentence on the ground that he is suffering from a serious medical condition that substantially diminishes his ability to provide self-care within the environment of the RCC." Id. at *3 (citing U.S.S.G. §1b1.13

(6)

comment p.1(A)). The same justifications apply here.

Second, U.S.S.G. §1B1.13 comment n.1(D) authorizes release based on "an extraordinary and compelling reason other than, or in combination with the [other] reasons described". The Petitioner meets this requirement as well, because he has less than 30 months left on his sentence according to the presumptive 12-month reduction attributed to the Second Chance Act under the First Step Act, which is both retroactive and applicable to the defendant here.

The defendant stated that he would be able to quarantine once he is immediately release to his returning address listed in his PSI with his mother Eyvette Mizell and his brother Twin Mizell. He will receive Medicare/Medicaid by the Department of Health through the State of New York. The benefits of keeping him in prison for the remainder of his sentence are minimal, and the potential consequences of doing so are extraordinarily severe.

The defendant's performance in the BOP and formulation of a concrete release plan ensure that his immediate release would not pose a danger to the community. As such, it is respectfully submitted that, extraordinary and compelling reasons are present here.

## II.  **18 U.S.C. § 3553(a) Factors**

The defendant has shown an abundance of achievement and rehabilitation during his incarceration. He has not received any serious disciplinary reports, only one 300 level infraction. His current release date is October 9, 2022.

The Petitioner earned his GED in 2016, while housed at FCI Raybrook. He then enrolled in Community College courses where he earned an Associate's Degree in Entrepreneurship. A few months later, the defendant was transferred to FCI Fort Dix where he took a 120-hour course in V-Tech Computer skills, earning a Certificate of Completion in July 2019. He later enrolled in a 500 hour Residential RDAP treatment program, which he recently graduated from in November 2020, as a mentor. The defendant has all of his good time and a concrete release plan to allow him to return. Once released, the concrete plan already in place will ensure that he will seamlessly transition back into the community. As such, the defendant's release would not pose a danger to the community. Suspending all but time served of the

defendant's sentence would reduce his risk of contracting COVID-19 and to allow him to move forward with the productive and law-abiding life for which he has been preparing for.

### CONCLUSION

WHEREFORE, the Petitioner seeks to have his sentence reduced to time served or, in the alternative, to be placed on home confinement for the remainder of his federal term under the Compassionate Release and CARES Act of 2020. Allowing the Petitioner to serve the remainder of his sentence on home confinement will allow him to protect himself from exposure to COVID-19, which puts him at an "extraordinary risk" for his life.

Respectfully submitted,

By:  Kevin MIZELL, Acting PRO-SE
     FED. REG. NO. # 70893-054
     UNIT 5852 (RDAP)
     FEDERAL CORRECTIONAL INSTITUTIUON
     FORT DIX
     P.O. BOX 2000
     JOINT BASE MDL, NJ 08640

## CERTIFICATE OF SERVICE

I, KEVIN MIZELL, acting pro-se in accordance with 29 U.S.C. § 1746 under the pains and penalty of perjury without the United States hereby certify that I served this Motion for Reduction of Sentence and Compassionate Release pursuant to the First Step Act and CARES Act under Title 18 U.S.C. § 3582 (c)(1)(A)(i) to the Clerk of Court's Office for the United States District Court, Southern District of New York, Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, Room #2104 New York, NY 10007-1312 by the United States Postal prepai mailing service on this 27th day of January 2021.

Kevin Mizell 70893-054
Federal Correctional Institution
F C I Fort Dix
P.O. Box 2000
Joint Base MDL, NJ 08640

USMP3
SDNY

Criminal
Docketing JVR

RECEIVED
2021 FEB -3 PM 2:10
CLERK'S OFFICE
S.D.N.Y.

Clerk of Court office
United States District court
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Room 2104
New York, NY 10007-1312

7000781330 2014

FEBRUARY 1, 2021

Judge Sullivan,

I AM WRITING YOU TO LET YOU KNOW THAT ALTHOUGH I HAVE FILED A MOTION WITH THE COURT FOR COMPASSIONATE RELEASE/ REDUCTION IN SENTENCE 18 USC 3582 (c)(1)(A)(i), I HAVE REVIEWED MY SENTENCING MINUTES, AND ON PAGE 42, CONCERNING YOUR HONOR'S RECOMMENDATION TO TAKE THE 500-HOUR RESIDENTIAL DRUG ABUSE PROGRAM (RDAP), AND THAT YOU STATED TO ME THAT ANOTHER BENEFIT OF THIS PROGRAM WAS THAT IF I SUCCESSFULLY COMPLETED IT, I COULD GET A YEAR OFF OF MY SENTENCE, AND GO HOME SOONER. ON PAGE 43 YOUR HONOR SAID "USE THE TIME PRODUCTIVELY SO THAT WHEN YOU GET OUT, YOU CAN HIT THE GROUND RUNNING IN A PRODUCTIVE WAY. SO GET AN EDUCATION. YOU'RE REALLY SMART I HAVE NO REASON TO DOUBT THAT YOU COULD GET YOUR GED AND THEN YOU COULD GET A COLLEGE DEGREE AND MORE." I MUST SAY YOUR HONOR, YOU WERE ABSOLUTELY CORRECT! NOT ONLY DID I GET MY GED, BUT I ALSO RECEIVED AN ASSOCIATES DEGREE IN AAS ENTREPRENEURSHIP MANAGEMENT WITH A GPA OF 3.629, I COMPLETED A 4-MONTH 120-HOUR V-TECH COMPUTER PROGRAM, AND SUCCESSFULLY COMPLETED THE 500 HOUR (RDAP) PROGRAM AND CURRENTLY AM AN ACTIVE MENTOR. UNDER 3621(E), THE BOP SAYS THAT I AM NOT ELIGIBLE FOR THE TIME OFF FOR (RDAP) BECAUSE

OF MY CRIMES. I AM AWARE THAT YOU HAVE THE POWER AND AUTHORITY TO MAKE A RECOMMENDATION TO GRAND PRAIRIE, TEXAS, TO GRANT ME THE YEAR OFF FOR COMPLETING (RDAP).

THEREFORE, IN LIEU OF THE COMPASSIONATE RELEASE MOTION, ~~I ASK~~ THAT YOU WOULD CONSIDER MAKING A RECOMMENDATION TO GRAND PRAIRIE ON MY BEHALF, SO THAT AS YOU STATED, I MAY "HIT THE GROUND RUNNING IN A PRODUCTIVE WAY." I THANK YOU IN ADVANCE FOR YOUR CONSIDERATION.

RESPECTFULLY SUBMITTED,
KEVIN MIZELL
Kevin Mizell 70893-054

Kevin Mizell 70893-054
Federal Correction Institution
F.C.I Fort Dix
P.O. Box 2000
Joint Base MDL NJ 08640

Criminal Docketing

TRENTON NJ 085

2 FEB 2021   PM 6 L

RECEIVED

2021 FEB -4 PM 2:07

CLERK'S OFFICE
S.D.N.Y

Clerk of Court office

United States District Court

Southern District of New York

500 Pearl Street, Room 2104

New York, NY 10007

10007-133099